## Case No. 18,047.

WORMELEY et al. v. WORMELEY et al.

[1 Brock. 330.] 1

Circuit Court, D. Virginia. Nov. Term, 1817.

VIOLATION OF TRUST—POWER OF SALE AND REINVESTMENT—BONA FIDE PURCHASERS—RIGHT TO PROFITS AND IMPROVEMENTS.

1. A deed of marriage settlement, executed on the day of the marriage, which conveys to a trustee a tract of land and some slaves. principally for the wife and children, has in it this uncommon clause: "That whenever. in the opinion of the said T. S., the trustee, the said landed estate can be sold and conveyed. and the money arising from the sale thereof. laid out in the purchase of other lands. advantageously for those concerned or interested therein, then the said T.

1 [Reported by John W. Brockenbrough, Esq.]

S. is hereby authorized and empowered to sell and convey the same; and the lands so by him purchased, shall be in every respect subject to all the provisions, uses, trusts, and contingencies. as those were by him sold and conveyed." Per curiam: The power thus granted is great, but not unlimited. The trustee is to exercise, not his will, but his judgment. He can only sell and make a re-investment, when, in his opinion, both of these acts can be done advantageously to the parties interested.

2. If the trustee sells the land worth $10,000, and re-invests it in land not worth $1,000, or if there is no re-investment of the money at all, in either case, the power is not executed. The sale and purchase are part of one operation; and the operation is incomplete if either be wanting. Nor can the judgment be fairly exercised on the advantageousness of a sale and purchase, without comparing the tract to be sold with the tract to be purchased.

3. Therefore, where the trustee sold the trust lands to one of his own creditors (who held a mortgage on a tract of land owned by the trustee, which was foreclosed), and the creditor discounted the balance due on the mortgage, in part payment of the trust estate, although this sale was with the approbation of the husband and father of the cestuis que trust, and placed the cestuis que trust on another tract of land, which was not, however, conveyed to the same uses with the trust land, held, that this is not a correct execution of the trust; and as to the trustee himself, the whole transaction is vitiated, and if he had taken a reconveyance of the land to himself, he would have held it subject to the trusts of the original deed, for a trustee cannot bargain with himself.

4. A purchaser of the trust property. with notice of the trust and its violation. is himself a trustee, and holds the lands subject to the claim of the cestuis que trust.

5. In this case. the trustee sold to V., his creditor. That creditor had notice of the trust, for that appeared on the face of the deed, unuer which his vendor held. He must be considered as having notice of the violation of the trust—First, because part of the proceeds of the sale were applied to the payment of the trustee's individual debt; and, secondly, because he had a right to see the deed by which the exchanged lands were settled to the same uses with the first, and its non-production was equivalent to its non-existence. V., therefore, held the land subject to the trust.

6. C. and M. were sub-purchasers from V. They had the same notice of the trust that V. had, and they also knew, that the trustee had not settled other lands to the same uses as the original trust deed, and that part of the proceeds of the trust lands had been applied to the trustee's individual debt. They, therefore, were purchasers with notice of the violation of the trust, and held the lands subject to the trust.

7. It is no excuse to them, that the trustee may have "given credit to the cestui que trust for all that he received from V.," for that was not all that the trustee was bound to do. He was bound to lay out the proceeds advantageously in other lands.

8. It is not sufficient for the purchasers, C. and M.. to deny all fraud in themselves, and all knowledge of fraud. in V. and the trustee, unless they deny a knowledge of the facts, from which fraud is inferred by the law.

9. To constitute a purchaser without notice, it is not sufficient that the contract should be made without notice. but that the purchase-money should be paid before notice.

10. These purchasers, although they are to be held as trustees for the cestuis que trust, are not, however, to be viewed as mere squatters. They believed their title to be good. They are entitled (1) to the encumbrances from which they have relieved the land; (2) to the permanent improve-

ments which they have made on the land; and (3) for the advances they have made for the support of the wife and children. They are chargeable with profits. The advances are to be set off against the profits; and the encumbrances and improvements to be a charge on the land, unless absorbed by the residue of the profits.

This was a bill in chancery, exhibited by Mary Wormeley, the wife of Hugh Wallace Wormeley, and her infant children, John S., Mary W., Jane B., and Anne B. Wormeley. by their next friend, against the said Hugh Wallace Wormeley, Thomas Strode, Richard Veitch, and David Castleman, and Charles McCormick, for the purpose of enforcing the trusts of a marriage settlement (executed by the said Hugh and Mary, previous to their marriage, in which the said Strode was the trustee), for setting aside a sale, made of the trust property, by the said Strode, to the said Veitch, and by him, to Castleman and McCormick; and for obtaining an account and other relief. The bill charged the sale to have been a breach of the trusts, and that the purchasers had notice. The facts are as follows:

In contemplation of a marriage between Hugh Wallace Wormeley and Mary Strode, an indenture of three parts was executed on the 5th of August, 1807, by way of marriage settlement, to which the said husband, and intended wife, and Thomas Strode, her brother, as trustee, were parties. The indenture, after reciting the intended marriage, in case it shall take effect, and in bar of dower and jointure, conveys all the real and personal estate, held by Hugh W. Wormley, under a certain indenture, specified in the deed, as his paternal inheritance, to Thomas Strode, in fee upon the following trusts, viz., "for the use, benefit, and emolument, of the said Mary, and her children, if any she have, until the decease of her intended husband, and then, if she should be the longest liver, until the children should, respectively, arrive at legal maturity, at which time each individual of them is to receive his equal dividend, &c., leaving, at least, one full third part of the estate, &c., in her possession, for, and during her natural life; then, on her decease, the landed part of the said one-third, to be divided among her children, and the personal property, according to the will of the said Mary, at her decease. But if the said Mary should depart this life before the decease of the said Hugh, then he is to enjoy the whole benefits, emoluments, and profits, during his natural life, then to be divided amongst said Hugh's children, as he, by will, shall see cause to direct, and then this trust, so far as relates to T. Strode, to end, &c.; and so, in like manner, should the said Mary depart this life without issue, then this trust, to end, &c. But should Wormeley depart this life before the said Mary, and leave no issue, then the said Mary to have and enjoy the whole of said estate, for, and during her natural life, and then to descend to the heirs of the said Wormeley, or as his will, relative thereto, may provide." Then follows this clause: "And it is further covenanted, that, whenever, in the opinion of the said Thomas Strode, the said landed property can be sold and conveyed, and the money arising from the sale thereof, be laid out in the purchase of other lands advantageously for those concerned and interested therein, that then, and in that case, the said Thomas Strode is hereby authorized to sell, and, by proper deeds of writing, to convey the same; and the lands so purchased, shall be in every respect subject to all the provisions, uses, trusts, and contingencies, as those were, by him sold and conveyed. And it is further understood by the parties, that the said Hugh W., under leave of the said Thomas Strode, his heirs and assigns, shall occupy and enjoy the hereby conveyed estate, real and personal, and the issues and profits thereof, for, and during the term of his natural life, and after that, the said estate to be divided agreeably to the foregoing contingencies."

The property conveyed by the settlement consisted of about 350 acres of land, situated in Frederick county, in Virginia. The marriage took effect on the day that the deed of settlement was executed, and four children were the fruits of the marriage, who, with their mother, suing by their next friend, George F. Strother, were the parties plaintiff in this cause. For a short time after the marriage, Wormeley and his wife resided on the Frederick lands, and a negotiation was then entered into between Wormeley and Strode, the trustee, for the exchange of the Frederick lands, for lands belonging to Strode in the county of Fauquier, in Virginia. Various reasons were suggested for this exchange, the wishes of friends, the proximity to the trustee and the other relations of the wife, and the superior accommodations for the family of Wormeley. The negotiation took effect; but no deed of conveyance or covenant of agreement recognising the exchange, was ever made by Wormeley; and no conveyance of any sort, or declaration of trust, substituting the Fauquier lands for those conveyed by the marriage settlement, was ever executed by the trustee. Wormeley and his family, however, removed to the Fauquier lands, and resided on them for some time. During this residence, to wit. on the 16th of September, 1810, the trustees sold and conveyed the Frederick lands, to the defendant Veitch, for the sum of $6,500; and to this conveyance, Wormeley, for the purpose of signifying his approbation of the sale, became a party. The circumstances of this transaction were as follows: Strode, the trustee, had become the owner of a tract of land in Culpepper county, in Virginia, subject to a mortgage to Veitch and one Thompson, upon which more than $3,000 were then due, and a foreclosure had taken place. To discharge this debt, and relieve the Culpepper estate, was a leading object of the sale,

and so much of the trust money as was necessary for the extinguishment of this debt, was applied for this purpose. At the same time, Strode, as collateral security to Veitch for the performance of the covenant of general warranty contained in the indenture, executed a mortgage upon the Fauquier lands, then in the possession of Wormeley. In 1811, Veitch conveyed the Frederick lands, to the defendants, Castleman and McCormick, for a large pecuniary consideration, in pursuance of a previous agreement, and by the same deed, made an equitable assignment of the mortgage on the Fauquier lands. About this time, Wormeley, having become dissatisfied with the Fauquier lands, a negotiation took place for his removal to some lands of Strode, the trustee, in Kentucky; and, upon that occasion, a conditional agreement was entered into between Strode and Wormeley, for the purchase of a part of the Kentucky lands, in lieu of the Fauquier lands, at a stipulated price, if Wormeley should, after his removal there, be satisfied with them. Wormeley, accordingly, removed to Kentucky, with his family; but, becoming dissatisfied with the Kentucky lands, the agreement was never carried into effect. Afterwards, in April, 1813, Castleman and McCormick, by deed, released the mortgage on the Fauquier lands, in consideration, that Veitch would enter into a general covenant of warranty to them of the Frederick lands; and on the same day, Strode the trustee executed a deed of trust to one Daniel Lee, subjecting the Kentucky lands to a lien as security for the warranty in the conveyance of the Frederick lands, and, subject to that lien, to the trusts of the marriage settlement, if Wormeley should accept these lands, reserving, however, to himself, a right to substitute any other lands upon which to charge the trusts of the marriage settlement. At this period, the dissatisfaction of Wormeley was known to all the parties, and Wormeley was neither a party, nor assented to the deed; and Castleman and McCormick had not paid the purchase-money. In August, 1813, the trustee sold the Fauquier lands to certain persons, by the name of Grimmar and Mundell, without making any other provision for the trusts of the marriage settlement.

MARSHALL, Circuit Justice. The plaintiffs in this cause, are a wife and a mother, with her three infant children. They apply to this court for its aid, to restore them to the possession of property conveyed in contemplation of marriage, by a deed of which they are the principal objects. The defendants are the husband, the trustee (and that trustee a brother), and the purchasers of the trust estate. The defendant, Hugh Wallace Wormeley, being about to intermarry with the plaintiff, Mary, executed a deed, dated the 5th of August, 1807, the day on which the marriage took effect, by which he conveyed, in lieu of dower, his paternal estate, consisting of a small tract of land, in the county of Frederick, and some slaves, to Thomas Strode, the brother of his intended wife, in trust, principally for her and her children. This property is gone, the trust is totally defeated, and the first inquiry is, whether this effect has been produced by the regular execution of any power inserted in the deed. The deed contains this uncommon clause: "And it is further covenanted, bargained, and agreed, by and between the said contracting parties, that whenever, in the opinion of the said Thomas Strode, the said landed estate can be sold, and conveyed, and the money arising from the sale thereof, laid out in the purchase of other lands, advantageously, for those concerned, or interested therein; that then, in that case, he, the said Thomas Strode, is hereby authorized, and by these presents, fully empowered to sell, and by proper deeds of writing, convey the same; and the lands, so by him purchased, shall be, in every respect, subject to all the provisions, uses, trusts, and contingencies, as those were by him sold and conveyed." I term this, an uncommon clause, because it authorizes the trustee to sell on his own judgment, without consulting those who are to be benefited by the trust. The power thus granted is great, but it is not unlimited. The trustee is not to exercise his will, but his judgment. Whenever, in his opinion, the trust estate can be sold, and the money invested in other land, advantageously for the parties interested; then, and then only, may he sell and make this reinvestment. The standard by which he is to act is invisible. Yet it is an actually existing standard, and one by which the conduct of the trustee must be measured. To determine, whether he has been regulated by it or not, his actions must be examined.

In inquiring, whether a party has acted according to his best judgment or not, allowance must be made for the fallibility of the human mind, and for difference of opinion. But there are strong cases, in which all will unite in saying, that the judgment has not been fairly exercised. If, under such a power, as is in this deed, a tract of land, notoriously worth $10,000, should be sold, and invested in a tract not worth $1,000, it would be in vain for the trustee to say, that in his opinion, the sale and reinvestment was an advantageous operation. He could not have entertained such an opinion. The case is certainly not less strong, where he makes no reinvestment whatever. He could not be of opinion, that it was advantageous to the parties, to sell the land and get nothing for it. But further. Where there is no reinvestment of the money, the very letter of the power is disregarded. He is to sell only, when the money can be advantageously laid out in the purchase of other lands, "and the lands so purchased, are to be held in trust, for the same objects with those sold." There

must be other lands purchased, or the power is not executed. The sale and purchase are different links of the same chain; though the parts are distinct, they seem to be parts of one operation, which is incomplete, if either be wanting. These parts, too, it would seem, must be in execution at the same time. I do not well comprehend, how the judgment can be fairly exercised on the advantageousness of a sale and purchase, without comparing the tract to be sold, with the tract to be purchased. The words of the power, and the situation of the parties, are equally opposed to the idea of selling first, and then searching for other lands, on which to place the Wormeley family.

Having premised these general observations, on the nature of the power, under which the trustee acted, the court will proceed to consider more particularly, the facts of the case, in order to decide, whether the cestuis que trust have still a remedy against the land, or only against the person of the trustee or purchaser. Wormeley, with his wife, resided, for a short time, either on the trust estate, or with his mother. Their situation appears not to have been comfortable; and in little more than a year after the marriage, both the father and brother of Mrs. Wormeley expressed a strong desire to remove her into their neighbourhood; and an agreement was made between the defendants, Strode and Wormeley, with the approbation, as it appears, of the friends of Wormeley, for the exchange of the trust land, for a tract lying in the county of Fauquier. To this tract, Wormeley removed; and soon afterwards, Thomas Strode sold the land, in Frederick, to Richard Veitch, one of the defendants in this cause, and conveyed it to him by deed, dated in September, 1810, to which deed Wormeley was a party. Veitch was the holder of a mortgage on the estate of Strode, in Culpepper, which had been foreclosed, and on which something more than $3,000 were due. This sum was discounted in part payment of the trust estate. The Fauquier lands were never conveyed to the same uses with the Frederick lands, nor have any others been substituted in their place. In about twelve months, Wormeley became dissatisfied with this estate, and some arrangements were made for furnishing him with lands in Kentucky, which are not further noticed, because they have terminated in nothing, and do not affect this part of the case. Subsequently to these arrangements, Strode sold the land in Fauquier.

Excluding from our view the rights of the purchaser, and considering the case as between the plaintiffs and the trustee, can it be doubted whether this transaction would, in any manner, affect the Frederick lands? We will not inquire into the relative value of the two tracts: we will not inquire whether the approbation, given by the friends of Wormeley to this exchange, arose from a knowledge of this relative value, or from the hope that he would derive other advantages from living in the neighbourhood of his wife's father, which would more than compensate for any small loss in the exchange; we will not inquire, whether, at the time, Strode intended to execute the contract; we will suppose this transaction to have originated in the causes which have been assigned for it; still the policy, and the wise policy, of courts of equity, forbids trustees to bargain with themselves. In the execution of trusts, especially such as this, no unworthy ingredient, respecting self, ought to be intermingled. It is wisely held to vitiate the whole transaction. A trustee, conscious of the utmost purity and fairness of intention, who makes a contract with himself, for the trust property, performs a most perilous act. He exposes himself to every hazard which can befal the estate. It does not, in point of law, alter the case, that Wormeley assented to this exchange. He had no power to assent. The deed was executed to secure the land against him and his indiscretions. If, then, the Fauquier lands had been actually settled in trust, the title of Strode, to the Frederick land, could not be secure. But the Fauquier land has not been, nor can it be, settled on the Wormeley family. That part of the power, which respects the reinvestment of the money in other lands, remains totally unexecuted. Can it, then, be doubted, that Strode, if he now held the Frederick lands, if he had conveyed them, and taken back a re-conveyance to himself, would hold them under the trusts created by the deed of 1807?

Believing this point to be perfectly clear, the court will proceed to inquire, secondly, whether the land, in the hands of purchasers, remains liable to the same trusts? It is believed to be unquestionable, that, by conveying the land in Frederick, to his own purposes, without selling other land to the same trusts, the trustee committed a breach of trust. It is equally clear, that a purchaser of the trust property, with notice of the trust, and its violation, is himself a trustee. This principle is too familiar with the profession to require that cases should be cited in its support. Had the purchasers, in this case, notice? And, first, had Veitch notice? I do not mean to inquire, merely, whether he had notice of the trust, because, claiming title under the trust deed, he is, of course, acquainted with its contents; but, also, whether he had also notice of the breach of trust? Strode violated his duty as a trustee, probably, in bargaining with himself, or with Wormeley, whom he knew to be incapable of making a contract respecting this property: and in selling the Frederick land for his own purposes: certainly, in not immediately executing a proper deed for the Fauquier lands. He ought not to have permitted this duty to remain a day unperformed. He ought not to have exposed the Fauquier lands to the

hazard of remaining apparently his property, without any deed declaring the trusts by which he held them. Had he purchased other lands for the Wormeley family, and taken a conveyance to himself, without specifying the trusts, his conduct, certainly, would not have comported with his duty. As little did it accord with his duty to hold this land without a declaration of trust. I speak of the state of things at the time of the sale to Veitch, not of the state of things afterwards.

Were these facts known to Veitch? With the application of the purchase-money in discharge of his own decree, he was of course acquainted. That Wormeley relied on receiving the Fauquier land instead of the Frederick land, was, probably, equally well known to him. The character of the title, and the situation of the parties, Wormeley, no longer residing on the Frederick land, and having removed to Fauquier, would lead to inquiries which must explain the transaction. Wormeley's certificate, too, given a few days before the deed to Veitch was executed, shows that some specific land was substituted for that in Frederick; and shows further, that the tract so substituted was acquired by an exchange of property with the trustee. Veitch then knew from this certificate. that the land was not to be sold to him by Strode in execution of his power, but that Strode had already appropriated the trust estate to his own use, and was selling for himself. Whether he knew that the tract in Fauquier was the land alluded to or not, he knew the character of the transaction, and took upon himself the risk of its validity. But it is not to be believed, that he did not know every thing which it was material to know. The certificate itself points to the tract, for it is dated at Roseville, in Fauquier. He must, also, be considered, in this court, as having notice, that a deed was not executed, declaring the trusts on which the newly acquired land was held. He had a right to see this deed, and was bound to see it. Its non-production was proof of its non-existence. But this is not all. If he knew that the Fauquier land was substituted for the Frederick land, as we think he did, then the deed he received of those lands, as collateral security, proves his knowledge, in fact, that no conveyance of them in trust had been made. He probably relied on the certificate of Wormeley as his security, and, certainly, that certificate would go far in protecting him from any claim made by Wormeley. But he ought to have been advised, that Mrs. Wormeley and her children could not be affected by it.

There is a circumstance growing out of the deed from Strode to Veitch, not entirely unworthy of notice. That deed is apparently drawn by counsel before whom the papers were laid. We should expect it to state the transaction truly, was there nothing in the transaction which there was a wish to conceal. We should expect it to refer to the exchange between Wormeley and Strode, if that exchange was believed to be a fair execution of the trust. Such a reference would have secured the land from many casualties. But the deed declares, that Strode sold the trust land to Veitch, "with an intention of investing the proceeds of such sale in other lands of equal or greater value." This untruth, which was known to Veitch, betrays a consciousness that the transaction required some other shape than its own. But could Veitch even have supposed, that the money was to be invested in other lands to be purchased in future; he knew that a large portion of it was directed to his own debt, and he must have known, that a trustee, whose embarrassments could induce him to seize a trust fund in order to relieve his own estate from being sold under a mortgage that was foreclosed, could not come into market without money, to purchase other lands, under very advantageous circumstances. Add to this consideration, that the power given by the deed of trust to Strode, was not to sell with the intention of investing the money in other lands at some future time, but to sell and invest when, in his opinion, it could be done to advantage. Veitch, then, had notice of all the material facts which constituted the breach of trust committed by Strode, and is, consequently, to be considered, in this court, as holding the land subject to the trusts created by the deed of August, 1807.

Are Castleman and McCormick in a different situation? The answer to this question depends on their having notice of the transactions which constitute the breach of trust. Purchasing a title depending on the deed of August, 1807, they would of course inspect that deed, and would perceive that Strode's power to sell was coupled with the duty of investing the money in other lands. They would perceive that this was not a case where a sale is the object of the trust; where it is the duty of the trustee to sell in any event. and afterwards dispose of the trust money; but a case in which the great object of the trust was the security of the estate; and the power to sell was limited to the case where, "in the opinion of Strode, the land can be sold and the money laid out in the purchase of other lands, advantageously for those interested. and that in such case, the lands so purchased were to be held for the same trusts, &c." The very deed under which they claim, then, informed them that their title originated in a trust, and that it behoved them to inquire how that trust had been executed. The parties were all within the reach of inquiry, and the difficulty of making it was inconsiderable. The deed to Veitch was dated the 16th of September, 1810, and the deed to Castleman and McCormick was certified for the purpose of being recorded on 25th of June, 1811. They say in their answer that they purchased in 1810. Previous to this time, Wormeley had become dissatisfied with the Fauquier land

and they knew it. Had they not been informed of this, they must have known that the title to those lands still remained in Strode, and, consequently, that he had not performed his duty as a trustee. With this knowledge, they enable Strode to sell the Fauquier land.

If the case rested on these facts, the court would feel much difficulty in allowing to these defendants the protection they claim as purchasers without notice. But the case does not rest on these facts. In their answer these defendants say, that they cannot doubt the fairness of the transaction, "because they are well satisfied that Strode never received more from Veitch, than he has given the cestui que trust credit for." Is it a fair execution of this trust and power, to sell the trust estate, and give the cestui que trust credit for the amount of sales? The defendants proceed to deny all fraud in themselves and all knowledge of fraud in Strode or Veitch. This is not sufficient. Fraud is an inference of law from facts, and this answer denies no fact alleged in the bill, nor does it deny a knowledge of those facts, with which knowledge they are charged, but states their opinion that no fact which has come to their knowledge, is fraudulent. The answer then, though it does not confess, does not controvert notice of the facts which prove a breach of trust. Is that notice otherwise proved?

Benjamin Barnet deposes that they were in treaty with Strode for the land before the sale to Veitch, and were to have paid a part of the purchase-money to Veitch in discharge of a debt due to him from Strode, and that they endeavoured to make an arrangement with Veitch, but failed; when afterwards this land was sold to Veitch, these defendants must have known that it was sold not for the purposes of the trust, but on Strode's own account. Their answer avers the opinion that such a sale was lawful. George Tacket proves that in May, 1811, prior to the execution of the deed from Veitch, while the Wormeley family were in Frederick on their way to Kentucky, when some doubt was expressed of continuing their journey, the defendant Castleman expressed great uneasiness, lest the journey should not be prosecuted, because he expected they would receive lands in that country, in lieu of the lands he had purchased from Veitch. Still further. It is well known that to be a purchaser without notice, not only the contract must be made, but the purchase-money paid before notice, and this should be averred in the answer. See Garnett v. Macon [Case No. 5,245]. Now there is no such averment, and the fact is otherwise. It is proved by Mrs. Powell, that upwards of $3,-000, part of the purchase-money was paid in the fall of 1813, and spring of 1814, not only after the full notice, acknowledged in May, 1811, but after the institution of this suit. What material fact, then, was unknown to these defendants? Not one. They were not

ignorant of the facts, but of the law arising on those facts. Either there has been no breach of trust, and the original contract is valid, or the defendants are trustees. The court is of opinion that they are trustees. But though trustees, they are not to be considered as mere squatters; the light in which they are viewed by the counsel for the plaintiffs. They believed their title to be good and acted on the conviction that it was so. They trusted to the full power of Strode. They do not appear to have placed Veitch between them and danger, but, probably, could not raise the money. While compelled to do equity, they are entitled to equity. They are entitled to the benefit of the encumbrances from which the land has been relieved, and of the permanent improvements which they have made on it, and to the advances to Wormeley for the support of his family. At the same time they are accountable for the profits. The advances are properly chargeable against the profits, but the encumbrances which have been taken up, and the improvements, if not absorbed by the profits, constitute a charge upon the land.

Decree: This cause came on to be heard on the bill, answers, exhibits, and depositions of witnesses and arguments of counsel, which being fully considered, the court is of opinion, that the exchange of land made between the defendant, Hugh Wallace Wormeley and Thomas Strode, is not valid in equity, and that the defendant, Thomas Strode, has committed a breach of trust, in selling the land conveyed to him by the deed of the 5th of August, 1807, for purposes not warranted by that deed; in misapplying the money produced by the said sale; and in failing to settle other lands to the same trusts as were created by the said deed; and that the defendants, Richard Veitch, David Castleman, and Charles McCormick, are purchasers, with notice of the facts which constitute the breach of trust committed by the said Thomas Strode, and are, therefore, in equity, considered as trustees; and that the defendants, David Castleman and Charles McCormick, do hold the land conveyed by Hugh Wallace Wormeley to Thomas Strode, by deed, bearing date the 5th day of August, 1807, charged with the trusts in the said deed mentioned, until a court of equity shall decree a conveyance thereof. The court is further of opinion, that the said defendants are severally accountable for the rents and profits arising out of the said trust property while in possession thereof, and that the said defendants, Castleman and McCormick, are entitled to the amount of the encumbrances from which the land has been relieved by any of the defendants, and of the value of the permanent improvements made thereon, and of the advances which have been made to the said Hugh Wallace Wormeley, by any of the defendants, for the support of his family; the said advances to be credited against the rents and profits, and the value of the said permanent improvements, and of the encumbrances which have been discharged, and which may

not be abated by the rents and profits, to be charged on the land itself; and it is referred to one of the commissioners of the court to take accounts according to the directions herein given, and report the same to this court in order to a final decree.

NOTE. In pursuance of the interlocutory decree above recited, the commissioner to whom the accounts were referred, made a report, which was partially confirmed; the court reserving some questions for its future decision. "And it being represented on the part of the plaintiffs, that they have removed to the state of Kentucky, and are about removing to the state of Mississippi, and that it will be highly advantageous to them to sell the trust estate, and to invest the proceeds of sale in other lands in the state of Mississippi, to the uses and trusts expressed in the deed of August 5, 1807; and it appearing, also, that there is no fund other than the trust estate, from which the sums due to the defendants, Castleman and McCormick, can be drawn, this court is further of opinion, that the said trust estate ought to be sold, and the proceeds of sale, after paying the sum due to the defendants, Castleman and McCormick, invested in other lands in the state of Mississippi, to the same uses and trusts, &c." The sale was accordingly decreed, commissioners were appointed to make it, and the proceeds directed to be first applied in satisfaction of the sums found due by the report, and the balance to be paid to the trustee, to be invested by him in Mississippi lands, "for which he shall take a conveyance to himself, in trust for the uses and trusts expressed in the deed of August 5, 1807, &c.": and the court proceeded to revoke the powers of Thomas Strode, he being an unfit person to act longer in that capacity. Other orders and decrees were subsequently made in this cause, which it is unnecessary to detail further. Finally, the court set aside so much of the decretal order of a previous term, as directed the land to be sold to the highest bidder; and until the appointment of a trustee, the marshal was directed to receive propositions for the purchase of the land, and to report the same to the court, which would give such further directions respecting the sale of the land as should then appear proper. Whereupon the defendants appealed from all the decrees pronounced in the cause.

The supreme court *held* (1) That the exchange of the Frederick lands for those in Fauquier, was invalid, because it was in contravention of the letter and spirit of the power of the trustee, and because the "stubborn rule of equity" which forbids a trustee from bargaining with himself, was peculiarly applicable to this case; (2) that Veitch was a purchaser with notice of the breach of trust; and that the sale was, consequently, invalid as to him, and he must be considered in a court of equity as a mere trustee; (3) that Castleman and McCormick were in no better situation, and must also be considered as purchasers with notice, and consequently, as trustees; (4) that a bona fide purchaser, without notice, must be so, not only at the time of the contract, but at the time of the payment of the purchase-money. Decrees affirmed with costs, Johnson, J., dissenting.

An objection to the jurisdiction of the court was taken in the supreme court on the ground that Wormeley, the husband, was made a defendant, and so, all the parties on each side of the cause were not citizens of different states, since he had the same citizenship as his wife and infant children. Strawbridge v. Curtis. 3 Cranch [7 U. S.] 267: Corporation of New Orleans v. Winter, 1 Wheat. [14 U. S.] 94. But the court said that Wormeley was a nominal defendant, joined for the sake of conformity in the bill, against whom no decree was sought, that he appeared voluntarily, though perhaps, he could not have been compelled so to do; that the court would not suffer its jurisdiction to be ousted by the joinder or nonjoinder of mere formal parties, but would rather proceed without them, and decide upon the merits of the case between the parties who have the real interests before it, whenever it could be done without prejudice to the rights of others. Wormeley v. Wormeley, 8 Wheat. [21 U. S.] 421.